ORIGINAL

RICHARD L HOLCOMB (HI Bar No. 9177)
BRIAN J BRAZIER (HI Bar No. 9343) (Of Counsel)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite # 808
Honolulu, HI 96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: rholcomblaw@gmail.com
Email: brianbrazier@gmail.com

Attorneys for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 19 2013

at 3 o'clock and 55 min ___ M.
SUE BEITIA, CLERK

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Catherine Russell; Terry Anderson; (De)Occupy Honolulu; And John Does 1-50, <br><br> Plaintiffs, <br><br> vs. <br><br> City and County of Honolulu; John Does 1-50. <br><br> Defendants. | CASE NO. CV13 00475 LEK RLP <br><br> COMPLAINT FOR DEPRIVATION OF CIVIL RIGHTS, DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF; EXHIBITS 1-10 |

## COMPLAINT FOR DEPRIVATION OF CIVIL RIGHT, DAMAGES, DECTARORY AND INJUNCTIVE RELIEF

COME NOW the Plaintiffs, TERRY ANDERSON, and CATHERINE

RUSSELL by and through their undersigned counsel, and complain against

Defendants CITY AND COUNTY OF HONOLULU, and JOHN DOEs 1-50 as

follows:

1

## INTRODUCTION

1.    This is an action to vindicate Plaintiffs' rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. § 1983, and the Constitution and laws of the State of Hawaii. Plaintiffs were and continue to be deprived of their federal and state constitutional rights, as well as rights rooted in the statutes and common law of the State of Hawaii. Plaintiffs seek declaratory judgment, injunctive relief, and damages.

2.    Plaintiffs have been victimized by a continuing assault on Plaintiffs' and other members of De-Occupy Honolulu's property, due process rights, and First Amendment Rights when, on numerous occasions city officials, employees and police officers conducted raids upon the encampment of De-Occupy Honolulu.

3.    During those raids, numerous items of Plaintiffs' personal property have been seized, stolen by Defendants, and/or destroyed. These raids were conducted without notice. Defendants ransom the seized property for $200 or, aggrieved property owners may request a hearing. Yet, when Plaintiffs requested hearings as directed on the back of the post-seizure notice, they have received no response.

4.    No notice of a hearing or opportunity to be heard has ever been provided to Plaintiffs, before or after the seizure and/or destruction of their property. No notice that the property would even be seized has been provided.

5. Defendants have attempted to justify these raids and the resulting deprivation or destruction of property by relying on "Bill 7" which was codified at Chapter 29, Article 16 of the Revised Ordinances of Honolulu ("ROH"). Bill 7 is unconstitutional on its face and/or as applied to Plaintiffs. And, even if the ordinances could survive constitutional scrutiny, the Defendants routinely disregard inconvenient provisions of the ordinance.

6. Notably, Bill 7 was passed and enforcement began only after Plaintiffs (Mr. Anderson as a member of De-Occupy Honolulu) entered into an agreement, which was entered as an Order, with Defendants regarding the seizure of property. *De-Occupy Honolulu, et. al. v. City and County of Honolulu, et. al.*, No. 1:12-cv-000668 (Dist. Haw.) [Doc. 134 (Order entered June 6, 2013)] Despite this agreement and in bad faith, Defendants have engaged in the conduct described in this Complaint.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343, 2201, and 2202. This Court has jurisdiction over the supplemental claims arising under Hawaii State law pursuant to 28 U.S.C. § 1367.

8. This Court has personal jurisdiction over Defendant City and County of Honolulu as it is a government entity, more specifically a municipal corporation incorporated under the laws of the State of Hawai'i, located in Hawai'i.

9.     This Court also has personal jurisdiction over each of the Doe Defendants because they, inter alia, acted under the color of laws, policies, customs, and/or practices of the City and County of Honolulu and/or within the geographic confines of the State of Hawai'i.

10.    Venue is proper pursuant to 28 U.S.C. § 1391.

### PARTIES

11.    Plaintiff Catherine Russell is a natural person and a citizen of the United States, who at all material times herein did reside in Hawai'i.  She is an active member of the De-Occupy Honolulu movement and has owned and created numerous signs used in De-Occupy demonstrations.  Ms. Russell is homeless and has lived in the De-Occupy encampment periodically for over one year.  Ms. Russell continues to reside in Hawai'i.

12.    Plaintiff Terry Anderson is a natural person and a citizen of the United States, who at all material times herein did reside in Honolulu, Hawai'i.  He is an active member of the De-Occupy movement.  Mr. Anderson is not homeless but regularly stays in the De-Occupy encampment in order to protest Defendant's actions and protest social issues, particularly the treatment of the homeless.

13.    Plaintiff De-Occupy Honolulu is an unincorporated association comprised of a wide range of people from widely varying economic, social, and ethnic backgrounds.  Its purpose is to condemn, protest and advocate against social

injustices, including legal, governmental and social policies victimizing the homeless population of Honolulu and throughout Hawaii. Much like other "Occupy Wall Street" affiliated groups which have and continue to maintain a presence in most major American cities, its members attempt to further these purposes by maintaining a constant public vigil, conducting organized demonstrations, and erecting signs expressing their political views to be viewed by the public.   It brings this action by and through Plaintiffs Catherine Russell, and Terry Anderson as its authorized representatives, as well as by the organization itself.   All of the Plaintiffs in this suit are associated with Plaintiff De-Occupy and have participated in numerous demonstrations, including residing in the De-Occupy encampment.   De-Occupy also maintains communal property to be used by all of its member for creating works of art to present their messages of protest and to provide for the general welfare of its members.   As set forth below, the Defendants' unconstitutional actions occurred over the course of almost two years. And, Defendants continue to act in a similar manner, causing its members to suffer immediate or threatened injury.   Further, as discussed below, some of the property actually seized and destroyed was communal property belonging to the organization as a whole, damaging not only the members of De-Occupy, but also the organization itself.

14.     Defendant City is a municipal corporation incorporated under the laws of the State of Hawaii. The City is authorized by law to control and maintain the Honolulu Police Department, Department of Facility Maintenance, and the Office of Housing, all agencies or departments of the city, who act on the City's behalf in the areas of law enforcement and other illegal activities described in this Complaint.  The City is therefore ultimately responsible for these agencies and their actions, and therefore, must assume the risks incidental to the maintenance of these agencies and their employees.

15.     Defendants John Doe 1-50 are sued in both their personal and official capacity as City officials and/or employees who have supervised, overseen, or participated in the raids described below.  John Doe 1-50 are responsible for seizures of persons or property and/or restraints on Plaintiffs' exercise of free speech and/or otherwise may be participants in the unconstitutional and/or tortious acts and practices discussed within this complaint. Defendants John Doe 1-50, because of their actions, are accordingly liable to Plaintiffs for damages and other relief as set forth in this Complaint.

16.     Plaintiffs reserve the right to petition this Court to amend this Complaint to add such parties as their true identities and capacities are ascertained through discovery or otherwise.

## The Applicable Ordinances

17.     Starting in 2010, the City and County of Honolulu has targeted the homeless with the passage of two controversial bills, Bill 39 which is codified as Chapter 29, Article 18 of the Revised Ordinances of Honolulu ("ROH"), Bill 54 which is codified as Chapter 29, Article 19 of the ROH, and, most recently, Bill 7, codified at Chapter 29, Article 16 of the ROH which is the subject of this suit.   The cumulative effect of these ordinances, in conjunction with Section 708-814.5 of the Hawaii Revised Statutes (criminalizing trespassing in parks after hours) and ROH §§ 10-1.2(a)(12), (13), (14), 10-1.2(b)(9), and 10-1.6(d) (same) is the criminalization of homelessness.  If homeless citizens move out of the parks to the only other place available to them, *i.e.*, the sidewalks, the City has subjected those vulnerable citizens to having all of their worldly assets summarily seized and ransomed for $200 as discussed below.

18.     ROH § 29-16(a) states:  "[n]o person shall erect, establish, place, construct maintain, keep or operate any sidewalk nuisance except as provided in Section 29-16.6 or as otherwise authorized by law.  Any sidewalk nuisance in violation of this subsection shall be subject to summary removal."  ROH § 29-16.3(a).

19.     The ordinance also defines sidewalk nuisance as "any object or collection of objects constructed, erected, installed, maintained, kept, or operated on or over any

sidewalk, including but not limited to structures, stalls, stands, tents, furniture, and containers and any of their contents or attachments." ROH § 29-16.2.

20.    What constitutes a "collection of objects" is not defined and apparently left to the arbitrary discretion of city officials.  The lack of that definition is important because ROH § 29-16.6 excepts the following from the definition of "sidewalk nuisances:"

> "[a]n object or collection of objects smaller than 42 inches in length, 25 inches in width, and 43 inches in height, provided that:
>
> (A) The object or collection of objects is attended to by an individual at all times;
>
> (B) The object or collection of objects, or any portion thereof, does not extend into the roadway;
>
> (C) The object or collection of objects does not obstruct the use of 36 inches in width of the sidewalk and does not obstruct the free movement of pedestrians;
>
> (D) The object or collection of objects does not obstruct individuals from access to or regress from legally parked vehicles;
>
> (E) The object or collection of objects does not interfere with other lawful activities taking place on the sidewalk and its placement complies with other provisions of [Chapter 29]; and
>
> (F) The object or collection of objects does not otherwise threaten public safety."

With the exception of Plaintiffs' tents, which were more than 25 inches wide (as are all tents known to the undersigned), many or all of the objects seized in this case met the criteria of ROH § 29-16.6.

21.    Nevertheless, the ordinance permits the director of the Department of Facilities Management to "summarily remove or cause the immediate and summary removal of a sidewalk nuisance." ROH § 29-16.3. Thus, no notice of the seizure of property is required before the items are removed. The director must store the property for at least 30 days and provide notice of the seizure after the seizure. ROH § 29-16.3(b)(2).

22.    The property owner may reclaim the property if s/he provides "satisfactory proof of identity and entitlement" (which is also undefined) and pay the City a $200 ransom.    This amount is extraordinarily high and counsel can find no evidence that the City attempted to calculate the actual cost of the seizures that was incurred by the City.    Instead, it appears that the $200 amount was arbitrarily assigned and operates to punish homeless citizens for homelessness.    Moreover, the $200 is likely most often in excess of the value of the property seized.

23.    If the presumably homeless property owner has a mailing address, the property owner may request a post-deprivation hearing challenging the seizure:

> An owner of a sidewalk-nuisance removed pursuant to this section may contest the removal by written request for a hearing to the director received no later than 25 calendar days after removal of the sidewalk-nuisance. The owner shall provide a current mailing address to receive the notice of the decision of the director regarding the appeal. The hearing shall be conducted by the director in accordance with the provisions of HRS Chapter 91. The appeal shall be limited to a determination of whether the sidewalk-nuisance was properly removed and a fee properly assessed pursuant to this section.

ROH § 29-16.3(d). However, if the director's decision is in favor of the City, the property owner must pay the $200 ransom within seven days to have the property returned. *Id.* Otherwise, the property will be destroyed or sold. *Id.*

23.   The ordinance authorizes the Director of the Department of Facilities Maintenance to adopt rules governing the hearing procedure. ROH § 29-16.4. And, on June 19, 2013, Corporation Counsel approved rules adopted by the director "as to form and legality" and the Mayor approved the rules as to form. The rules are attached as **Exhibit One**.

24.   Highlights of those rules are that: the Department of Facilities Maintenance may decide not to have the hearing at all, Rules of the Department of Facilities Maintenance (hereinafter referred to as "Rules") § 14-5-9; the hearing cannot proceed until at least seven days after the petitioner is notified of the hearing, Rules § 14-5-11(a); the petitioner has both the burden of proof and of production to prove whatever is necessary to convince the hearing officer to waive the $200 ransom, Rules § 14-5-21; and, the only constraint on the length of time in which a decision must be rendered is that the matter "shall be heard and disposed of within 120 calendar days." Rules § 14-5-23(a).

25.   These extraordinary time periods in which the City has authorized itself to keep all personal belongings of homeless citizens is particularly troubling. Even where only a vehicle had been seized, the Ninth Circuit has specifically held that:

[a] five-day delay in justifying detention of a private vehicle is too long [because] [d]ays, even hours, of unnecessary delay may impose onerous burdens upon a person deprived of his vehicle. *Lee v. Thornton*, supra, 538 F.2d at 33, a case involving seizure and detention of automobiles in comparable circumstances, held that due process required action on a petition for rescission or mitigation within 24 hours, and, if the petition was not granted in full, a hearing on probable cause within 72 hours.

*Stypmann v. City & County of San Francisco*, 557 F.2d 1338, 1343-45 (9th Cir. 1977). Subsequently, California changed its statute to allow for a hearing within 48 hours and, where another Plaintiff did not challenge the "garage-man's lien," the Ninth Circuit found that due process was satisfied. *Goichman*, 682 F.2d at 1324; *See also City of Los Angeles v. David*, 538 U.S. 715, 717-18 (2003) (27 hour delay between towing of vehicle and hearing permissible where car had been returned and citing *Stypmann* and *Goichman* with approval). Here, the property seized includes but is not limited to: food, medication, shelter, clothing, money, instruments used in earning income, and basic hygienic products. Clearly, homeless citizens victimized by this Draconian ordinance face much more onerous burdens than do motorists whose vehicles have been seized.

## **Unlawful Seizure and/or Destruction of Property**

24.     On July 25, 2013, at approximately 10:40 pm, City officials conducted an unnoticed raid on the De-Occupy Honolulu camp at Thomas Square.

25.   City officials, without a warrant, seized a wide variety of property both inside and outside of tents without giving the owners an opportunity to remove the property from the area.

26.   Much of this property fit the criteria of ROH § 29-16.6 and should not have been seized even if the ordinance were constitutional.

27.   Much of this property was the communal property of De-Occupy Honolulu, including but not limited to:  shelter (tents), clothes, bedding, medications, books, art supplies, duffel bags, chairs, protest signs, cots and mats, and more.

28.   Plaintiff Terry Anderson was the *de-facto* custodian of De-Occupy Honolulu's property that was seized in that raid.  Accordingly and on behalf of De-Occupy Honolulu, Mr. Anderson has been attempting to retrieve property seized from the City.

29.   Specifically, Mr. Anderson has attempted retrieve the following property:

   a.  Tag #176:  gray/green Ozark Trail tent, small purple chair, tan duffle, blue shirt, pair black socks, tan baseball hat, blanket, pillow;

   b.  Tag #177:  wooden table, black suitcase, scissors, bedding, Coleman green/grey tent "safe zone", 2 protest signs, wooden easel, stool, blue chair, 2 folding blue chairs, folding cot, umbrella-gray, broom, folding cot, 2 utility suitcases, white foam mat, small gas can, blue suitcase with bedding;

c. Tag #178: Red/grey tent, Island Magic boogie board, blue/white cooler, bedding, pillow, folding futon.

d. Tag #179: red/grey Embark tent, clothes, bedding, blue blow-up bed, blue canvas, white shelfing board, clothes, eye glasses with case "Elle."

e. Tag #180: Blue tarp Ozark Trail orange, towels, black suitcase-clothes, black sleeping bag, blue black backpack – clothes, camoflog [sic] duffle (illegible), 2 beach mat, bag with clothes, red jacket.

f. Tag #181: Vincent Truong – Meds, child playbook, white clock, green Coleman tent, white lawn chair, clothes, toy blue truck, plastic bowls, empty black duffel, heeled shoes, books, pink purse, clothes, canned goods, 1 bag assorted meds, radio, misc items, speaker, CD case w/ CD, orange/brown tent – Coleman green fly for tent;

g. Tag #182: Rectangle wooden board w/ 4 arrows in corner, Rectangle wooden board w/ "Bill 7," Square wooden board with "Educated," Rectangle board w/ "Houselessness."

These post-seizure notices ("tags") are attached as **Collective Exhibit Two**.

30.    Even assuming that Mr. Anderson or members of De-Occupy Honolulu were not entitled to a hearing, which they clearly are, Mr. Anderson is unable to retrieve the property.  It is unknown what "satisfaction of entitlement" Mr. Anderson must

provide the director before the property would be released even with payment of the $200 ransom.

31.     It is also unknown whether the director perceives each object listed on the tags as a separate "sidewalk nuisance" as defined by ROH § 29-16.2, whether each tag represents the director's perception of a "collection of objects," or whether the entirety of the tags represents a collection of objects.  Thus, the ransom could be as low as $200 for the return of all of the objects assuming that the entirety of the objects collected are perceived as a "collection of objects;" or, alternatively as high as $15,800 if each of the 79 objects that can be ascertained from the tags as having been seized are ransomed separately.

32.     The events of July 25 were captured on film by H. Doug Matsuoka.  Mr. Matsuoka uploaded the video to the internet using livestream.  The original video can be found online at:

http://new.livestream.com/accounts/3132312/events/2263680/videos/25476672

Because City officials decided to conduct this raid in the dead of night, De-Occupy member Doug Matsuoka brightened the video using the Apple app iMovie, a process comparable to turning up the "brightness" on a computer monitor.  The "brightened" video is  attached as **Exhibit 10** and is available at:

http://www.youtube.com/watch?v=F4AWuSb6PxM&feature=youtu.be

33.    On July 31, 2013, at approximately 4:15 am, City officials conducted another unnoticed raid on the De-Occupy Honolulu camp at Thomas Square.

34.    City officials, without a warrant, seized a wide variety of property both inside and outside of tents without giving the owners an opportunity to remove the property from the area.

35.    Much of this property fit the criteria of ROH § 29-16.6 and should not have been seized even if the ordinance were constitutional.

36.    Much of this property was the communal property of De-Occupy Honolulu, including but not limited to:  shelter (tents), clothes, bedding, medications, books, art supplies, duffel bags, chairs, protest signs, cots and mats, and more.

37.    Plaintiff Terry Anderson was the *de-facto* custodian of De-Occupy Honolulu's property that was seized in that raid.  Accordingly and on behalf of De-Occupy Honolulu, Mr. Anderson has been attempting to retrieve property seized from the City.

38.    Specifically, Mr. Anderson has attempted retrieve the following property:

> a.  Tag #83:  black pool chairs, 1 brown pillow, 1 blue small umbrella, 3 wooden pallets, 1 blue/gray tent, 3 blue foam mats, 1 bag clothes/waterbottles;
>
> b.  Tag #184:  1 small white/blue textsport tent, 1 red/black chair, 1 gray lawn chair, 1 brick block, 1 bag trash, cardboard;

These post-seizure notices ("tags") are attached as **Collective Exhibit Three**.

39.     Even assuming that Mr. Anderson or members of De-Occupy Honolulu were not entitled to a hearing, which they clearly are, Mr. Anderson is unable to retrieve the property.  It is unknown what "satisfaction of entitlement" Mr. Anderson must provide the director before the property would be released even with payment of the $200 ransom.

40.     It is also unknown whether the director perceives each object listed on the tags as a separate "sidewalk nuisance" as defined by ROH § 29-16.2, whether each tag represents the director's perception of a "collection of objects," or whether the entirety of the tags represents a collection of objects.  Thus, the ransom could be as low as $200 for the return of all of the objects if the entirety of the objects collected are perceived as a "collection of objects;" or, alternatively as high as $3,800 if each of the 19 objects (assuming only two "waterbottles") that can be ascertained from the tags are ransomed separately.

41.     On August 2, 2013, at approximately 4:24 am, City officials conducted yet another unnoticed raid on the De-Occupy Honolulu camp at Thomas Square.

42.     City officials, without a warrant, seized a wide variety of property both inside and outside of tents without giving the owners an opportunity to remove the property from the area.

43.     Much of this property fit the criteria of ROH § 29-16.6 and should not have been seized even if the ordinance were constitutional.

44.     Much of this property was the communal property of De-Occupy Honolulu, including but not limited to:  shelter (tents), clothes, bedding, medications, books, art supplies, duffel bags, chairs, protest signs, cots and mats, and more.

45.     Plaintiff Terry Anderson was the *de-facto* custodian of De-Occupy Honolulu's property that was seized in that raid.  Accordingly and on behalf of De-Occupy Honolulu, Mr. Anderson has been attempting to retrieve property seized from the City.

46.     Specifically, Mr. Anderson has attempted retrieve the following property:

   a.  Tag #192:  red/gray tent, mats, 3 pallets, small sign;

   b.  Tag #193:  Texsport green/beige tent, red chair, small dog kennel, bag clothes, blanket;

These post-seizure notices ("tags") are attached as **Collective Exhibit Four**.

47.     Even assuming that Mr. Anderson or members of De-Occupy Honolulu were not entitled to a hearing, which they clearly are, Mr. Anderson is unable to retrieve the property.  It is unknown what "satisfaction of entitlement" Mr. Anderson must provide the director before the property would be released even with payment of the $200 ransom.

48.     It is also unknown whether the director perceives each object listed on the tags as a separate "sidewalk nuisance" as defined by ROH § 29-16.2, whether each tag represents the director's perception of a "collection of objects," or whether the entirety of the tags represents a collection of objects. Thus, the ransom could be as low as $200 for the return of all of the objects if the entirety of the objects collected are perceived as a "collection of objects;" or, alternatively as high as $2,600 if each of the 13 objects (assuming only two "mats") that can be ascertained from the tags are ransomed separately.

49.     On August 19, 2013, Mr. Anderson wrote and e-mailed the Department of Facilities Maintenance requesting a hearing as to the seizure of the property on July 25, July 31, and August 2, 2013. **Exhibit Five**. The back of each tag contains instructions regarding the information that must be supplied in order to request a hearing. **Exhibit Six** (back of tags). The August 19 e-mail complied with those instructions. **Exhibit Seven**.

50.     On August 21, 2013, Mr. Anderson mailed, via registered mail, a letter containing the exact same information that was contained in the e-mail.

51.     Finally, on September 11, 2013, Mr. Anderson received a notice for a hearing to be held on September 20, 2013, nearly one month after the initial request was made.

52.   Yet again on August 22, 2013, City officials conducted yet another unnoticed raid on the De-Occupy encampment at Thomas Square. Plaintiff Catherine Russell was present at this raid.

53.   At this raid, City officials, without a warrant, seized a wide variety of property, including the property of Plaintiff Catherine Russell and communal property of De-Occupy Honolulu, both inside and outside of tents without giving the owners an opportunity to remove the property from the area.

54.   Much of this property fit the criteria of ROH § 29-16.6 and should not have been seized even if the ordinance were constitutional.

55.   Much of this property was the communal property of De-Occupy Honolulu and/or belonged to Plaintiff Russell.

56.   Accordingly and on behalf of De-Occupy Honolulu and herself, Ms. Russell has been attempting to retrieve property seized from the City.

57.   Specifically, Ms. Russell has attempted retrieve the following property:

   a. Tag #203:  Tent case with 5 lbs. weight, Gray Ozark tent, Clothes, Orange Blanket, Broken air mattress, Square foam, sheet, Animal Farm sign, Blue tent cover;

   b. Tag #204:  Pallet, Wooden board, Carpet tile, Card board, Green tent, "EA" sign, carpet, Folding cot, Dead plant, Office chair, Umbrella;

     c. Tag #205: Blue gay Ozark tent, Twin mattress, Plastic mat, 2 pallets, Card board, Green blanket;

     d. Tag #206 Pallets; Dog food; Orange Ozark tent.

These post-seizure notices ("tags") are attached as **Collective Exhibit Eight**.

58.    Even assuming that Ms. Russell or members of De-Occupy Honolulu were not entitled to a hearing, which they clearly are, Ms. Russell is unable to retrieve the property. It is unknown what "satisfaction of entitlement" Ms. Russell must provide the director before the property would be released even with payment of the $200 ransom.

59.    It is also unknown whether the director perceives each object listed on the tags as a separate "sidewalk nuisance" as defined by ROH § 29-16.2, whether each tag represents the director's perception of a "collection of objects," or whether the entirety of the tags represents a collection of objects. Thus, the ransom could be as low as $200 for the return of all of the objects if the entirety of the objects collected are perceived as a "collection of objects;" or, alternatively as high as $6,400 if each of the 32 objects (assuming only one item of "clothes" and two "pallets") that can be ascertained from the tags are ransomed separately.

60.    The August 22 raid was videotaped by Ms. Russell. The raw video footage was uploaded onto youtube and can be found at:

http://youtu.be/r5pCFY8XLcc

http://youtu.be/1e16jEVbXko

Because City officials decided to conduct this raid in the dead of night, De-Occupy member Doug Matsuoka brightened the video using the Apple app iMovie, a process comparable to turning up the "brightness" on a computer monitor. The "brightened" and combined video is available at:

http://youtu.be/RzaaYYPvXyY

These videos have been copied onto the disc attached to this Complaint and are specifically incorporated herein and are attached as **Exhibit 10.**

60.     Further, on August 22, 2013, other homeless people in the vicinity of Thomas Square remained unmolested despite the raid on De-Occupy members. Additionally, the numerical order of tags left following seizures on the De-Occupy encampment demonstrate that, at least recently, De-Occupy has largely been the sole target of Bill 7 enforcement. Those facts, coupled with the case pending before this Court styled *De-Occupy Honolulu, et. al. v. City and County of Honolulu, et. al.*, 1:12-cv-668 (Dist. Haw. 2013), of which Plaintiffs request that this Court take judicial notice of those filed documents and proceedings, Defendants have clearly acted with malice in all or a portion of the actions described in this Complaint.

61.     17.     On the morning of September 11, 2013 at 2:58am, Ms. Russell noticed the raid crew pulling up King Street and approaching Thomas Square. She

and other members of DeOccupy began to break down their camp immediately. They had removed all items except for a few protest signs that were on the sidewalk.

62.    She retrieved one sign about Police Brutality and went to grab another sign. As she picked up the second sign, she was swarmed by 4 police officers with one on the outskirts keeping her fellow protesters away from the situation. She was told by Officer Vicnes that she was not allowed to take my signs. The highest ranking officer on site, D. Koanui, also told her that she could not take the signs.  Officer Koanui, along with another officer had their hands on the signs trying to take them from Ms. Russell's hands. The officer threatened Ms. Russell with arrest by using language about obstruction of governmental operation charges. After being threatened with arrest, Ms. Russell let go of the free speech signs and stepped back.

63.    An officer then gave them to a DFM employee to process.

64.    Video of this process is attached hereto as **Exhibit Ten** is available at: https://www.youtube.com/watch?feature=player_embedded&v=sylp_RikNX0

65.    The actions reference herein take place between timestamp 2:30 and 4:30 into the video.

66.    On August 23, 2013, Ms. Russell, through her attorney, wrote the Department of Facilities Maintenance requesting a hearing as to the seizure of the property on August 22, 2013.  **Exhibit Nine**.  The back of each tag contains

instructions regarding the information that must be supplied in order to request a hearing. **Exhibit Six** (back of tags). The letter complied with those instructions. **Exhibit Nine**. And, the letter was mailed, via registered mail.

67. As of the drafting of this Complaint, neither Ms. Russell nor her attorney has received any response from the City and/or the Department of Facilities Maintenance. No hearing has been provided.

**Defendant City is liable for the actions of the individual Doe Defendants.**

68. One or more Defendants John Does 1-50 violated Plaintiffs' First, Fourth, and Fourteenth Amendment rights in seizing and destroying the property described above. Defendants have also violated Plaintiffs' rights pursuant to ancillary provisions of Article 1 of the Hawaii Constitution.

69. Defendants John Does 1-50 committed these acts pursuant to Defendant City's policy, practice, or customs, which constitute the standard operating procedure. Indeed, insofar as the individual Defendants may be heads of executive agencies, Defendant City has specifically provided them with carte blanche authority to adopt and promulgate rules and policies pertaining to these raids and the seizure of property.

70. Alternatively, Defendant City's policy, practice, or customs, which constitute the standard operating procedure caused the violative acts and/or Plaintiffs' damages because, in addition to having passed the unconstitutional

ordinances, Defendant City's practice or custom is to fail, neglect, or decline to oversee its employees or offer guidelines or policies to any or all of its employees in regards to administration, operation, or maintenance of the seizure of property pursuant to the ordinances – guidelines or policies which could easily be implemented to ensure that the rights of Plaintiffs or any other citizen would not be violated.

71.     Alternatively, Defendants John Does 1-50 were or are officials with final policy-making authority and/or the seizures of persons or property, denials of timely hearings, and/or interference with the Plaintiffs' exercise of protected speech constitutes an act of official governmental policy.

72.     Alternatively, Defendants John Does 1-50, employed by the City, have final policy-making authority and ratified a subordinate's unconstitutional decision to seize persons or property, deny timely hearings, and/or interfere with the Plaintiffs' exercise of protected speech.  The subordinate is also named as one or more of the John Doe 1-50 Defendants.

## FIRST CAUSE OF ACTION

### Violation of Fourth Amendment

73.     Paragraphs 1 through 67 are incorporated as though fully stated herein.

74.     Defendants' seizures of Plaintiffs' property as set forth above constitute unreasonable seizures in violation of the Fourth Amendment to the United States

Constitution and the current cause of action is within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

75.   Defendants' seizure of Plaintiffs' property and/or failure to return or to return the property in a usable condition also constitute unreasonable seizures in violation of the Fourth Amendment to the United States Constitution and the current cause of action is also within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

## SECOND CAUSE OF ACTION

### Due Process Violation

76.   Paragraphs 1 through 67 are incorporated as though fully stated herein.

77.   Plaintiffs' property was seized and/or destroyed without affording Plaintiffs notice and/or without affording Plaintiffs any timely and meaningful opportunity to be heard before or after the seizure or destruction.

78.   Defendants' seizures of Plaintiffs' property as set forth above without notice constitute violations of the Fourteenth Amendment to the United States Constitution and the current cause of action is within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

79.   Defendants' destruction of Plaintiffs' property and/or failure to return or to return the property in a usable condition without due process of law constitute violations of the Fourteenth Amendment to the United States Constitution and the

current cause of action is also within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

80.    Defendants' failure to provide timely and/or adequate pre- and/or post-deprivation hearings and, indeed, Defendants' failure to provide any timely response to Plaintiffs' various attempts to request hearings, constitute violations of the Fourteenth Amendment to the United States Constitution and the current cause of action is also within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

81.    Defendants' reliance on the undefined and unconstitutionally vague term "collection of objects" to arbitrarily determine whether objects are subject to seizure and/or to determine the ransom to be assessed before the owner may retrieve the property constitute violations of the Fourteenth Amendment to the United States Constitution and the current cause of action is also within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

82.    Defendants' arbitrary assignment of a $200 ransom without any attempt to reconcile that amount with the actual costs incurred in seizing the property constitute violations of the Fourteenth Amendment to the United States Constitution and the current cause of action is also within this Court's jurisdication pursuant to 42 U.S.C. § 1983.

## THIRD CAUSE OF ACTION

## First Amendment Violation

83.     Paragraphs 1 through 67 are incorporated as though fully stated herein.

84.     Defendants actions constitute a violation of the First Amendment of the United States Constitution as Defendants have interfered with and chilled speech and activities protected by the First Amendment to the United States Constitution. This cause of action is also within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

## FOURTH CAUSE OF ACTION

### Failure to Train and Supervise

85.     Paragraphs 1 through 67 are incorporated as though fully stated herein.

86.     Defendants failed to adequately train and supervise their officials, employees, and agents so as to prevent the seizure and destruction of Plaintiffs' property, which resulted in the violations of the First, Fourth and Fourteenth Amendments the current cause of action is also within this Court's jurisdiction pursuant to 42 U.S.C. § 1983.

87.     Defendants' failure to train, despite the number and frequency of raids at Thomas Square, amounts to deliberate indifference to the rights of persons with whom Defendants came into contact, including those of the Plaintiffs.

88.     The deficiency in training Defendants John Does 1-50 was an actual cause of the constitutional deprivations and injuries suffered by Plaintiffs.

## FIFTH CAUSE OF ACTION

### Hawaii Constitution – Unreasonable Seizure

89.  Paragraphs 1 through 67 are incorporated as though fully stated herein.

90.  Defendants violated Article 1, sections 6 and 7 of the Hawaii Constitution.

## SIXTH CAUSE OF ACTION

### Hawaii Constitution – Property and Due Process Protections

91.  Paragraphs 1 through 67 are incorporated as though fully stated herein.

92.  Defendants violated Article 1, sections 2, 5, and 8 of the Hawaii Constitution.

## SEVENTH CAUSE OF ACTION

### Hawaii Constitution – Freedom of Speech

93.  Paragraphs 1 through 67 are incorporated as though fully stated herein.

94.  Defendants violated Article 1, section 4 of the Hawaii Constitution.

## EIGHTH CAUSE OF ACTION

### Conversion

95.  Paragraphs 1 through 67 are incorporated as though fully stated herein.

96.  Plaintiffs have or had (at the time of seizure and/or destruction) title and/or the right to possess the property unlawfully seized and/or destroyed by the Defendants.  Defendants' actions in seizing and/or destroying the property and/or failing to return the property in a usable condition constitutes conversion.

97.   Plaintiffs are damaged as a result of Defendants actions and this Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

## NINTH CAUSE OF ACTION

### Replevin

98.   Paragraphs 1 through 67 are incorporated as though fully stated herein.

99.   Plaintiffs have or had (at the time of seizure and/or destruction) title and/or the right to possess the property unlawfully seized and/or destroyed by the Defendants.  Defendants' actions in seizing and/or destroying the property and/or failing to return the property in a usable condition is the basis for replevin relief.

100.  This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

## TENTH CAUSE OF ACTION

### Negligence

101.  Paragraphs 1 through 67 are incorporated as though fully stated herein.

102.  The damage, destruction and or failure to return Plaintiffs' property was forseeable and proximately caused by the negligence, gross negligence and/or negligent omissions of Defendants or their official, employees and/or agents.

103.   As a result of the negligence, gross negligence, carelessness and/or negligent omissions of Defendants, their officials, employees and/or agents, Plaintiffs have sustained monetary damages.

104.   This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

## ELEVENTH CAUSE OF ACTION

### Negligent Supervision and Training

105.   Paragraphs 1 through 67 are incorporated as though fully stated herein.

106.   Defendant City and its officials, employees and/or agents acting within the scope of their employment negligently supervised and/or trained and/or failed to supervise or train the individual Defendants, who were unfit for the performance of their duties as those duties relate to Plaintiffs and their property throughout the relevant time periods alleged herein, thereby causing Plaintiffs to suffer foreseeable injury, including monetary damages.

107.   This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

## TWELFTH CAUSE OF ACTION

### Trespass to Chattels

108.   Paragraphs 1 through 67 are incorporated as though fully stated herein.

109.   Plaintiffs have or had (at the time of seizure and/or destruction) title and/or the right to possess the property unlawfully seized and/or destroyed by the Defendants.   Defendants have intentionally interfered with Plaintiffs' lawful possession and/or use of property and those actions constitute trespass to chattels.

110.   Plaintiffs are damaged as a result of Defendants actions and this Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.     Declaratory judgment affirming that Chapter 29, Article 16 of the Revised Ordinances of Honolulu is unconstitutional on its face or as applied to Plaintiffs;

2.     Declaratory judgment affirming that Defendants' actions have violated and/or continue to violate Plaintiffs' rights pursuant to the First, Fourth, and Fourteenth Amendments of the United States Constitution, the ancillary provisions of the Hawaii Constitution;

3.     A temporary restraining order enjoining Defendants and/or their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of this injunction, from:

> 1. Seizing property . . . absent an objectively reasonable belief that it is [actually] abandoned, presents an immediate threat to public health or safety, or is evidence of a crime, or contraband; and

2. Absent an immediate threat to public health or safety, destruction of said seized property without maintaining it in a secure location for a period of less than 90 days.

*Lavan v. City of Los Angeles*, 693 F.3d 1022, 1024 (9th Cir. 2012);

3. Absent an immediate threat to public health or safety, any property of the homeless [including De-Occupy members] that is seized [and] that is not hazardous or contraband, may not be destroyed without prior written notice that such property will be seized and destroyed and a constitutionally adequate pre- [and timely (within 72 hours)] post-deprivation remedy provided to recover such property.

*Pamela Kincaid, et. al. v. City of Fresno, et. al.*, No. 1:06-cv-1445, 2006 WL 3542732 (E.D.Cal. December 8, 2006) (attached to Memorandum in Support of Motion for Preliminary Injunction, filed contemporaneously herewith); *see also Stypmann, supra*. And, compelling those persons identified above to:

"'leave a notice in a prominent place for any property taken on the belief that it is [actually] abandoned, including advising where the property is being kept and when it may be claimed by the rightful owner.'"

*Lavan*, 693 F.3d at 1024 (*quoting Tony Lavan v. City of Los Angeles*, No. 11-CV-2874, 2011 WL 1533070, at *5-6 (C.D.Cal. Apr. 22, 2011) (attached to Memorandum in Support of Motion for Preliminary Injunction, filed contemporaneously herewith). And, compelling Defendants to:

- immediately return the property seized to Plaintiffs as an extraordinary time during which a meaningful post-deprivation hearing should have been provided has long elapsed; and

- impose a penalty that is directly related to the costs incurred in seizing the property and/or a property owners' ability to pay

> taking into consideration the value of the property seized rather than imposing an arbitrary ransom on the return of seized property.

Alternatively, should the Court deny any portion of this injunctive relief, Plaintiffs request that Defendants be enjoined from or compelled to comply with the remainder of the relief requested above.  Further, Plaintiffs request that this Court impose any other conditions against Defendants that the Court may deem appropriate, such as compelling Defendants to provide adequate pre-seizure notice.

5.   Preliminary and/or permanent injunctive relief enjoining and/or compelling the same conduct articulated in the requested Temporary Restraining Order.

6.   Compensatory damages;

7.   Punitive damages;

8.   Such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable; and

9.   Attorney's fees, statutory fees and costs pursuant to 42 U.S.C. § 1988.

Dated: Honolulu, HI; September 13, 2013.

Respectfully submitted,

Richard Holcomb
Brian Brazier
Attorneys for Plaintiffs