IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CATHERINE RUSSELL; TERRY ANDERSON; (DE)OCCUPY HONOLULU; AND JOHN DOES 1-50, | CIVIL 13-00475 LEK-RLP |
| Plaintiffs, | |
| vs. | |
| CITY AND COUNTY OF HONOLULU; JOHN DOES 1-50, | |
| Defendants. | |

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Before the Court is Plaintiffs Catherine Russell ("Russell"), Terry Anderson ("Anderson"), and (De)Occupy Honolulu's (collectively "Plaintiffs") motion for preliminary injunction ("Motion"), filed on September 19, 2013.[1] [Dkt. nos. 5-9.] Defendant the City and County of Honolulu ("the City") filed its memorandum in opposition on October 7, 2013, and Plaintiffs filed their reply on October 15, 2013.[2] [Dkt. nos.

---

[1] Plaintiffs titled the document "Motion for Temporary Injunctive Restraining Order." On review of the motion, however, this Court construed it as a motion for preliminary injunction. [Minutes, filed 10/4/13 (dkt. no. 14).]

[2] Pursuant to Local Rule 7.4, Plaintiffs' reply was due fourteen days before the October 28, 2013 hearing. Because Monday, October 14, 2013, was a holiday for the district court, Plaintiffs' reply was due on Friday, October 11, 2013. See Local Rule LR6.1; Fed. R. Civ. P. 6(a)(6)(A). Plaintiffs' reply was therefore untimely. Although this Court will consider Plaintiffs' untimely reply, this Court cautions Plaintiffs that
(continued...)

15, 16.]  This matter came on for hearing on October 28, 2013.
Appearing on behalf of Plaintiffs were Brian Brazier, Esq., and
Richard Holcomb, Esq., and appearing on behalf of the City were
Ernest Nomura, Esq., and Dawn Spurlin, Esq.  After careful
consideration of the Motion, supporting and opposing memoranda,
and the arguments of counsel, Plaintiffs' Motion is HEREBY
GRANTED IN PART AND DENIED IN PART for the reasons set forth
below.

         This case arises from the City's summary removal of
property from (De)Occupy Honolulu encampment that the City has
deemed as sidewalk-nuisances.  Plaintiffs seek a preliminary
injunction to prevent the City from summarily confiscating their
property pursuant to Chapter 29, Article 16 of the Revised
Ordinances of Honolulu ("Article 16" and "ROH").  For the reasons
more fully stated below, Plaintiffs' Motion is GRANTED insofar as
this Court HEREBY ENJOINS the City from violating Plaintiffs'
procedural due process and Fourth Amendment rights in its
enforcement of Article 16, and orders the City to (1) return all
removed items identified in the Declaration of Catherine Russell
in Support of Motion, filed 9/19/13 (dkt. no. 8) ("Russell
Declaration"), and its exhibits, to Russell; (2) return all of
the removed items identified in the Declaration of Terry Anderson

_____

²(...continued)
any future untimely filing may result in sanctions, including
striking the untimely filing.

in Support of Motion, filed 9/19/13 (dkt. no. 9) ("Anderson

Declaration"), and its exhibits, to Anderson; (3) revise its form

Summary Removal Notice, and any other similar notices, to include

notice to the property owner of the right to reclaim necessities

without a fee and without a hearing, as well as notice of the

right to seek a waiver of the fee for the remaining items from

the hearings officer; and (4) to the extent that property owners

are present at the time of removal of items pursuant to Article

16, provide oral notice to the property owners of the right to

reclaim necessities without a fee and without a hearing and the

right to seek a waiver of the fee for the remaining items from

the hearings officer.  The Motion is DENIED in all other

respects.

## BACKGROUND

On September 19, 2013, Plaintiffs filed their Complaint

for Deprivation of Civil Rights, Damages, Declaratory and

Injunctive Relief ("Complaint") against the City.  The action

arises from the City's numerous raids upon the (De)Occupy

Honolulu encampment.  [Complaint at ¶ 2.]  Plaintiffs allege

that:

> During those raids, numerous items of Plaintiffs'
> personal property have been seized, stolen by
> Defendants, and/or destroyed.  These raids were
> conducted without notice.  Defendants ransom the
> seized property for $200 or, aggrieved property
> owners may request a hearing.  Yet, when
> Plaintiffs requested hearings as directed on the

> back of the post-seizure notice, they have
> received no response.

[Id. at ¶ 3.]  The City relies on "Bill 7," which was enacted and
codified as Article 16,[3] as authorizing the summary confiscation
of Plaintiffs' property and other similar property.  Plaintiffs
allege that Article 16 is unconstitutional on its face and as
applied to Plaintiffs.  Further, Plaintiffs contend that, even
assuming, *arguendo*, that Article 16 is constitutional, the City
regularly disregards certain provisions of Article 16.  [Id. at
¶ 5.]

Russell is member of (De)Occupy Honolulu.  She is
homeless and, for more than a year, she has periodically resided
at the (De)Occupy Honolulu encampment.  Anderson is also a member
of (De)Occupy Honolulu.  He is not homeless, but he regularly
stays at the encampment as an act of protest.  [Id. at ¶¶ 11-12.]

> Plaintiff (De)Occupy Honolulu is an unincorporated
> association comprised of a wide range of people
> from widely varying economic, social, and ethnic
> backgrounds.  Its purpose is to condemn, protest
> and advocate against social injustices, including
> legal, governmental and social policies
> victimizing the homeless population of Honolulu
> and throughout Hawaii.  Much like other "Occupy
> Wall Street" affiliated groups which have and
> continue to maintain a presence in most major
> American cities, its members attempt to further
> these purposes by maintaining a constant public
> vigil, conducting organized demonstrations, and
> erecting signs expressing their political views to
> be viewed by the public. . . .

---

[3] Article 16 addresses "Nuisances on Public Sidewalks."

4

[Id. at ¶ 13.]  Plaintiffs also allege that (De)Occupy Honolulu maintains communal property at the encampment, and some of the property that the City seized and destroyed was (De)Occupy Honolulu's communal property.  Plaintiffs therefore assert that the organization itself, and its members individually, have been injured by the raids.  [Id.]

The Complaint alleges that Article 16, in combination with Bill 39 (enacted and codified as ROH Chapter 29, Article 18 ("Article 18")),[4] Bill 54  (enacted and codified as ROH Chapter 29, Article 19 ("Article 19")),[5] Haw. Rev. Stat. § 708-814.5, ROH § 10-1.2(a)(12)-(14), (b)(9), and ROH § 10-1.6(d), effectively criminalizes homelessness.  [Id. at ¶ 17.]  Plaintiffs allege that, "[i]f homeless citizens move out of the parks to the only other place available to them, *i.e.*, the sidewalks, the City has subjected those vulnerable citizens to having all of their worldly assets summarily seized and ransomed for $200 . . . ."  [Id.]  Plaintiffs argue that $200 fee is "extraordinarily high[,]" usually exceeds the value of the seized property, and appears to be unrelated to the actual cost of the seizure process.  Plaintiffs contend that the fee "was arbitrarily

_____

[4] Article 18 addresses "Use of Sidewalk for Pedestrian Use."

[5] Article 19 addresses "Stored Property."  The validity of Article 19 is at issue in De-Occupy Honolulu, et al. v. City & County of Honolulu, et al., CV 12-00668 JMS-KSC ("the Article 19 Action").

assigned and operates to punish homeless citizens for homelessness."  [Id. at ¶ 22.]

ROH § 29-16.3(a) states that sidewalk-nuisances are subject to summary removal, but ROH § 29-16.3(b)(2) requires the Director of the Department of Facilities Management ("the Facilities Director" and "the Facilities Department") to store the property for at least thirty days and to provide post-seizure notice.  The ROH § 29-16.2 definition of a "sidewalk-nuisance" includes "any object or collection of objects . . . ." Plaintiffs emphasize that Article 16 does not define the term "collection of objects" and leaves that term "to the arbitrary discretion of city officials."  [Complaint at ¶ 20.]  ROH § 29-16.6 creates exceptions from the definition of a "sidewalk-nuisance," including objects or collections of objects smaller than forty-two inches by twenty-five inches by forty-three inches, provided that they also meet certain other requirements. Plaintiffs argue that there are no known tents that would meet the size requirements for the ROH § 29-16.6(1) exception, but, besides Plaintiffs' tents, "many or all of the objects seized in this case met the criteria of ROH § 29-16.6."  [Complaint at ¶ 20.]

Plaintiffs also point out that only persons who have a current mailing address can file a written request for a hearing to contest the seizure, and the only issues appealable in the

hearing are whether the City properly removed the items and whether the City properly assessed the fee pursuant to Article 16.  If the Facilities Director rules in favor of the City, the property owner has only seven days to pay the $200 fee, or the City destroys or sells the property.  [Id. at ¶ 22 (citing ROH § 29-16.3(d)).]  Plaintiffs also argue that, pursuant to the rules governing the hearing procedure, which the Facilities Director adopted and the mayor and corporation counsel approved ("the Hearing Rules"),[6] the Facilities Department can elect not to hold the hearing at all.  In addition, the Facilities Department cannot hold the hearing until at least seven days after the petitioner receives notice of the hearing, and the Facilities Department has up to 120 days to hear and dispose of the appeal.  The petitioner has the burden of proof and the burden of production to establish grounds to waive the $200 fee. [Id. at ¶¶ 23-24 (citing Hearing Rules §§ 14-5-9, 14-5-11(a), 14-5-21, 14-5-23(a)).]

        Plaintiffs argue that the time periods involved in the hearing procedure violate their due process rights, and they emphasize that "the property seized includes but is not limited to: food, medication, shelter, clothing, money, instruments used in earning income, and basic hygienic products."  [Id. at ¶ 25.]

---

        [6] A copy of the Hearing Rules is attached to the Complaint as Exhibit 1.

The Complaint describes an unnoticed raid on July 25, 2013 of (De)Occupy Honolulu's camp at Thomas Square at about 10:40 p.m.  City officials seized property inside and outside of tents without giving owners the opportunity to remove property from the area.  Plaintiffs argue that, even assuming *arguendo* that ordinance is valid, many of the items seized fit within the ROH § 29-16.6(1) exception and should not have been seized. Anderson was the custodian of the (De)Occupy Honolulu property seized during that raid.  He has been attempting to retrieve the property from the City, but has been unable to do so.  Plaintiffs argue that it is unclear whether each item taken is deemed a separate sidewalk-nuisance or whether groups of items taken during the same raid constitute separate nuisances.  The fee could be as low as $200 for all of the items taken during the July 25, 2013 raid, or as high as $15,800 if each item is a separate nuisance.  [Id. at ¶¶ 24-31.[7]]

The Complaint describes a similar raid on July 31, 2013 at about 4:15 a.m., another raid on August 2, 2013 at about 4:24 a.m., and Anderson's similar inability to recover (De)Occupy Honolulu's property seized during the raids.  [Id. at ¶¶ 33-40 (July 31 raid); id. at ¶¶ 41-48 (August 2 raid).]

---

[7] The Complaint contains two paragraphs 23 and two paragraphs 24.

On August 19, 2013, Anderson sent an e-mail to the Facilities Department requesting a hearing as to property seized during the three raids.  Plaintiffs assert that the request complied with the instructions given on the property tags issued to identify seized property.  [Id. at ¶ 49, Exhs. 5-7.]  On August 21, 2013, Anderson sent a letter via registered mail containing the same information as in the e-mail.  On September 11, 2013, he received notice of a September 20, 2013 hearing.  [Complaint at ¶¶ 50-51.]

While Anderson was trying to recover the seized items, the City conducted another raid on August 22, 2013.  The events related to this raid were similar to those related to the previous three.  [Id. at ¶¶ 52-59.]  On August 23, 2013, Russell, through her attorney, sent a letter via registered mail to the Facilities Department, requesting a hearing regarding the property seized on August 22, 2013.  Plaintiffs assert that the request complied with the instructions given on the property tags.  As of the filing of the Complaint, Russell had not received a response to her request for a hearing.  [Id. at ¶¶ 66-67, Exh. 9.]  The Facilities Department subsequently provided Russell with notice of a hearing scheduled for September 20, 2013.  [Mem. in Opp., Decl. of Ross S. Sasamura, P.E. ("Sasamura Decl."), Exh. Q (hearings officer's Findings of Fact, Conclusions

of Law, Decision and Order regarding four of Russell's cases challenging summary removal notices).[8]]

The Complaint alleges that, on August 22, 2013, there were other homeless persons in the vicinity of the (De)Occupy Honolulu encampment, but those persons were not subjected to a raid.  Plaintiffs also assert that "the numerical order of tags left following seizures on the (De)Occupy encampment demonstrate that, at least recently, (De)Occupy has largely been the sole target of [Article 16] enforcement."  [Complaint at ¶ 60 (second paragraph numbered 60).]  Plaintiffs argue that this, together with the proceedings in the Article 19 Action, shows that the City acted with malice in some or all of its actions described in the instant Complaint.  Plaintiffs ask this Court to take judicial notice of the filed documents and proceedings in the Article 19 Action.  [Id.]

On September 11, 2013, at 2:58 a.m., Russell saw the raid crew approaching, and she and other (De)Occupy Honolulu members began to break down their camp.  They removed all items except for a few protest signs on the sidewalk.  Russell attempted to remove the signs, but police officers prevented her

_____

[8] Ross Sasamura is the Facilities Director.  [Sasamura Decl. at ¶ 1.]  Exhibit P to his declaration is the Facilities Department's Administrative Directive regarding "Assessment of Fees for Release of Sidewalk-Nuisance under Honolulu Ordinance 13-8 (2013) Relating to Nuisances on Public Sidewalks" ("Administrative Directive").  [Id. at ¶ 12.]

from doing so, threatening her with arrest.  After the threat of arrest, she let go of the signs.  [Id. at ¶¶ 61-62.]

Russell's administrative hearing on September 20, 2013 addressed her summary removal notices from the July 28, 2013, July 30, 2013, August 2, 2013, and September 3, 2013 "raids." [Sasamura Decl., Exh. Q at 2-3.]  Anderson's administrative hearing on September 20, 2013 addressed his summary removal notices from the July 25, 2013, July 31, 2013 and August 2, 2013 "raids."  [Id., Exh. R at 1-2.]  In both proceedings, the hearings officer: 1) ruled that the items identified on the notices were sidewalk-nuisances and were subject to summary removal under Article 16; and 2) declined to reduce or waive the $200 fee because the petitioner did not produce any evidence or reason to support a waiver.  [Id., Exh. P at 3-4; id., Exh. R at 4-5.]

The Complaint alleges the following claims: a 42 U.S.C. § 1983 claim alleging Fourth Amendment violations ("Count I"); a § 1983 claim for due process violations ("Count II"); a § 1983 claim for First Amendment violations ("Count III"); a § 1983 claim for failure to train and supervise ("Count IV"); an unreasonable seizure claim under the Hawai`i Constitution ("Count V"); a due process claim under the Hawai`i Constitution ("Count VI"); a free speech claim under the Hawai`i Constitution ("Count VII"); conversion ("Count VIII"); replevin ("Count IX");

negligence ("Count X"); a state law negligent supervision and training claim ("Count XI"); and trespass to chattels ("Count XII").

The Complaint prays for the following relief:

- a declaratory judgment that Article 16 is unconstitutional on its face and as applied;
- a declaratory judgment that the City's actions violated Plaintiffs' rights under the federal and state constitutions;
- a temporary restraining order preventing the City from seizing property without complying with various requirements, apparently set forth in the Article 19 Action;
- preliminary and/or permanent injunctive relief regarding the same conduct addressed in the requested temporary restraining order;
- compensatory and punitive damages;
- any relief necessary to effectuate the judgment in this case or any other relief this Court deems appropriate; and
- attorneys' fees, and any other fees and costs pursuant to 42 U.S.C. § 1988.

In the instant Motion, Plaintiffs seek a preliminary injunction preventing the City and/or its officers, agents, servants, and employees, and anyone acting in concert or participating with them, and who have notice of the injunction from:

> 1.   Seizing property . . . absent an objectively reasonable belief that it is [actually] abandoned, presents an immediate threat to public health or safety, or is evidence of a crime, or contraband; and
>
> 2.   Absent an immediate threat to public health or safety, destruction of said seized property without maintaining it in a secure location for a period of less than 90 days.
>
> 3.   Absent an immediate threat public health or safety, any property of the homeless [including

(De)Occupy members] that is seized [and] that is
not hazardous or contraband, may not be destroyed
without prior written notice that such property
will be seized and destroyed and a
constitutionally adequate pre- [and] post-
deprivation remedy provided to recover such
property.

And, compelling those persons identified above to:

leave a notice in a prominent place for any
property taken on the belief that it is [actually]
abandoned, including advising where the property
is being kept and when it may be claimed by the
rightful owner.

4.    Failing to provide a meaningful and prompt
post-deprivation hearing justifying the seizure of
Plaintiffs' property.

5.    Confiscating free speech materials that are
actually attended to or in the physical custody of
the Plaintiffs.

[Motion at 4-6 (alterations in original) (citations and internal

block quote format omitted).]

### **STANDARD**

This Court has recognized that:

In general, the standard for a temporary
restraining order or a preliminary injunction is
as follows:

"[I]njunctive relief is an extraordinary
remedy that may only be awarded upon a clear
showing that the plaintiff is entitled to
such relief." Winter v. Natural Res. Def.
Council, Inc., 129 S. Ct. 365, 376 (2008).
The standard for granting a preliminary
injunction and the standard for granting a
temporary restraining order are identical.
See Haw. Cnty. Green Party v. Clinton, 980 F.
Supp. 1160, 1164 (D. Haw. 1997); Fed. R. Civ.
P. 65.

Sakala v. BAC Home Loans Servicing, LP, CV. No. 10-00578 DAE-LEK, 2011 WL 719482, at *4 (D. Hawai`i Feb. 22, 2011) (alteration in original).

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.  Am. Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting Winter v. Natural Res. Def. Council, Inc., --- U.S. ----, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)) (explaining that, "[t]o the extent that [the Ninth Circuit's] cases have suggested a lesser standard, they are no longer controlling, or even viable" (footnote omitted)); see also Winter, 129 S. Ct. at 374-76 (holding that, even where a likelihood of success on the merits is established, a mere "possibility" of irreparable injury is insufficient to warrant preliminary injunctive relief, because "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief").

Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co., 685 F. Supp. 2d 1123, 1128-29 (D. Hawai`i 2010) (footnote and some citations omitted) (alterations in original). . . .

Hunger v. Univ. of Hawai`i, 927 F. Supp. 2d 1007, 1015 (D. Hawai`i 2013) (some alterations in Hunger) (some citations omitted).

## DISCUSSION

## I.   Scope of the Motion

Plaintiffs state that they bring the instant Motion "pursuant to the First, Fourth and Fourteenth Amendments to the United States Constitution, Title 42 U.S.C. § 1983, and Rule 65(b) of the Federal Rules of Civil Procedure[.]" [Motion at 2.] Specifically, Plaintiffs contend that they are likely to succeed on the merits of their claims that: Article 16, on its face, violates the Procedural Due Process Clause of the Fourteenth Amendment because it does not provide for adequate notice and a timely hearing; Article 16, on its face, is unconstitutionally vague because of the lack of a definition for the term "collection of objects"; [Mem. in Supp. of Motion at 4;] and, in the application of Article 16, Defendants violated Plaintiffs' Fourth Amendment right against unreasonable seizure, Plaintiffs' due process right to notice and a reasonable opportunity to be heard, and Plaintiffs' First Amendment rights [id. at 24-26]. Plaintiffs note that the Hawai`i Constitution contains similar or identical guarantees of these rights and that Plaintiffs' tort and equitable claims seek redress for the same actions. [Id. at 22-23.] However, in light of Plaintiffs' express statement that they are bringing the instant Motion pursuant to § 1983 and the First, Fourth, and Fourteenth Amendments, and in light of Plaintiffs' specific likelihood of success arguments in the

Motion and the Reply, this Court construes the Motion as seeking a preliminary injunction as to Counts I, II, and III.  This Court therefore will not address Counts IV through XII.

This Court also notes that the Motion appears to suggest that Plaintiffs argue that one of the grounds for the requested injunction is that the City has violated what Plaintiffs characterize as the "stipulated preliminary injunction order" filed in the Article 19 Action on June 6, 2013.[9]  [Mem. in Supp. of Motion at 1-2.]  This Court will not address the question of whether the City's enforcement of Article 16 violated any order in the Article 19 Action.  To the extent that Plaintiffs allege that there was such a violation, the plaintiffs in the Article 19 Action must raise that issue before the district judge in that case.

II.  **Facial Challenges**

A.  **Procedural Due Process**

The Court turns first to Plaintiffs' claim that Article 16 is unconstitutional on its face because it does not comport with the requirements of procedural due process.  Plaintiffs

---

[9] This Court notes that the document is actually titled "Stipulation and Order Re: Motion for Preliminary Injunction," [Article 19 Action, filed 6/6/13 (dkt. no. 134),] and it set forth the parties' agreement regarding issues related to the plaintiffs' as-applied challenge to Article 19.  The district judge denied the motion for preliminary injunction as to the facial constitutional challenges.  Article 19 Action, 2013 WL 2285100 (D. Hawai`i May 21, 2013).

argue that Article 16 does not require officials to give notice
of an impending seizure and it does not provide for a pre-
deprivation hearing.  Even assuming, *arguendo*, that there is a
constitutionally sufficient reason excusing the failure to
provide a pre-deprivation hearing, Article 16 does not provide
for a timely and adequate post-deprivation hearing.

"At a minimum, the due process clause [of the
Fourteenth Amendment[10]] requires that a deprivation of life,
liberty or property by adjudication be preceded by notice and
opportunity to be heard, appropriate to the nature of the case."
Oyama v. Univ. of Haw., Civ. No. 12-00137 HG-BMK, 2013 WL
1767710, at *8 (D. Hawai`i Apr. 23, 2013) (citing Armstrong v.
Manzo, 380 U.S. 545, 550, 85 S. Ct. 1187, 1190, 14 L. Ed. 2d 62
(1965)).

The Ninth Circuit has stated the following about the
Fourteenth Amendment guarantee of the right to due process.

> The courts have long interpreted this—along with
> the parallel restriction on the federal government
> in the Fifth Amendment—to require that notice
> generally be given before the government may seize
> property.  See Mullane v. Cent. Hanover Bank &
> Trust Co., 339 U.S. 306, 313, 70 S. Ct. 652, 94 L.
> Ed. 865 (1950) ("Many controversies have raged
> about the cryptic and abstract words of the Due
> Process Clause but there can be no doubt that at a

---

[10] "The Fifth Amendment prohibits the federal government
from depriving persons of due process, while the Fourteenth
Amendment explicitly prohibits deprivations without due process
by the several States[.]"  Castillo v. McFadden, 399 F.3d 993,
1002 n.5 (9th Cir. 2005).

minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."); see also Zinermon v. Burch, 494 U.S. 113, 132, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990) ("In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking."); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) ("We have described the root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." (quotation marks omitted)).  In other words, the government may not take property like a thief in the night; rather, it must announce its intentions and give the property owner a chance to argue against the taking.

Of course, there are numerous exceptions to this general rule: The government need not give notice in an emergency, nor if notice would defeat the entire point of the seizure, nor when the interest at stake is small relative to the burden that giving notice would impose.  See, e.g., Zinermon, 494 U.S. at 132, 110 S. Ct. 975 ("[I]n situations where a predeprivation hearing is unduly burdensome in proportion to the liberty interest at stake . . . postdeprivation remedies might satisfy due process." (citation omitted)); Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (weighing "the fiscal and administrative burdens that [an] additional or substitute procedural requirement would entail"). Nevertheless, the default rule is advance notice and the state must present a strong justification for departing from the norm. . . .

Clement v. City of Glendale, 518 F.3d 1090, 1093-94 (9th Cir. 2008) (some alterations in Clement).

Article 16 does not provide for either pre-deprivation notice or a pre-deprivation hearing.  Once the Facilities

18

Director causes a sidewalk-nuisance to be removed, the following procedure applies:

Notification.

(A)  Written notice of the city's removal of the sidewalk-nuisance shall be posted for three consecutive days following removal of the sidewalk-nuisance on the public property where the sidewalk-nuisance was removed.  If notice cannot be posted as provided, then it shall be posted on the internet website for the city for three consecutive days following removal of the sidewalk-nuisance.

(B)  The written notice shall state:

(i)  The date, violation and removal of the sidewalk-nuisance;

(ii) That the owner may reclaim the sidewalk-nuisance within 30 calendar days from the date of the removal of the sidewalk-nuisance;

(iii) Contact information and instructions on how the owner may reclaim the sidewalk-nuisance;

(iv) That the owner has the right to appeal the removal of the sidewalk-nuisance in accordance with subsection (d); and

(v)  That, if not timely reclaimed or the subject of timely appeal, the sidewalk-nuisance shall be subject to disposal.

(C)  If a name and mailing address has been legibly and conspicuously provided on a sidewalk-nuisance removed pursuant to this subsection, then the director also shall issue a written notice, by certified mail, to the person named on the sidewalk-nuisance within seven calendar days following the date of the removal of the sidewalk-nuisance; provided that if only an address is provided on a sidewalk-nuisance, the director shall

19

issue a written notice, by certified mail,
addressed to the "Occupant" of that address,
within seven calendar days following the date
of the removal of the sidewalk-nuisance.  No
such notice shall be required if only the
name is provided and the director is unable
after a good faith effort to determine the
address of the named person.

. . . .

ROH § 29-16.3(b)(2).

Pursuant to ROH § 29-16.3, after a the removal of a

sidewalk-nuisance, the owner of the item or items removed can pay

a fine to reclaim the items or contest the removal:

(c) A sidewalk-nuisance removed pursuant to this
section may be reclaimed by the owner within
the applicable 30-day period specified in
subsection (b).  To reclaim a sidewalk-
nuisance, an owner or the owner's authorized
representative shall make arrangements with
the director to reclaim the sidewalk-
nuisance; shall appear in person within the
applicable 30-day period at the time and
place designated by the director; shall
provide satisfactory proof of identity and
entitlement; and shall pay to the city a
$200.00 fee for the city's cost of removal,
storage and handling of the sidewalk-
nuisance, whereupon the city shall release
the sidewalk-nuisance to the owner or the
owner's authorized representative, as is.

(d) An owner of a sidewalk-nuisance removed
pursuant to this section may contest the
removal by written request for a hearing to
the director received no later than 25
calendar days after removal of the sidewalk-
nuisance.  The owner shall provide a current
mailing address to receive the notice of the
decision of the director regarding the
appeal.  The hearing shall be conducted by
the director in accordance with the
provisions of HRS Chapter 91.  The appeal

20

shall be limited to a determination of whether the sidewalk-nuisance was properly removed and a fee properly assessed pursuant to this section.  The director shall continue to store or have stored the sidewalk-nuisance until the appeal has been decided.  If the decision of the director is in favor of the owner, then the owner may arrange to reclaim the sidewalk-nuisance without paying the fee for the removal, storage, and handling of the sidewalk-nuisance.  If the decision of the director is in favor of the city, then the sidewalk-nuisance may be returned to the owner or the owner's authorized representative upon payment of the removal, storage, and handling fee of $200.00.  If the owner or the owner's authorized representative fails to reclaim the sidewalk-nuisance within seven calendar days of the postmark for the notice of the decision, the sidewalk-nuisance may be destroyed, sold, or otherwise disposed of by the director.

The Facilities Director is responsible for storing the removed items for at least thirty days from the date of the removal or until the resolution of the hearing.  ROH § 29-16.3(b)(1), (3).

If the owner requests a hearing, the Facilities Department must decide whether or not to proceed.[11]  If it determines that it will proceed, it must appoint a hearings officer.  Hearing Rules § 14-5-9(a), (b).  The hearings officer must provide the owner with notice of the hearing at least seven

---

[11] If the Facilities Department elects not to proceed, it must provide the party who requested the hearing with written notice of the determination not to proceed and with the reasons for the decision not to proceed.  Hearing Rules § 14-5-10.  The party may seek reconsideration by the Facilities Department or pursue his judicial remedies.  Hearing Rules § 14-5-9(c).

days before the date of the hearing, and the notice must contain information about the hearing, as set forth in the Hearing Rules. Hearing Rules § 14-5-11(a).  Both parties to the proceeding, or their authorized representative, have the right to:

> (1) Examine the department case record as well as all documents and records to be used at the hearing at a reasonable time before the date of the hearing as well as during the hearing;
>
> (2) Present the case independently or with the aid of others, including legal counsel;
>
> (3) Bring witnesses, including an interpreter if a party or witness is non-English speaking;
>
> (4) Establish all pertinent facts and circumstances;
>
> (5) Advance any arguments appropriate to the issue being heard without undue interference; and
>
> (6) Question or refute any testimony or evidence, and confront and cross examine any witness.

Hearing Rules § 14-5-19(a).

The owner has the burden of production and the burden of proof.  The standard of proof is the preponderance of the evidence.  Hearing Rules § 14-5-21.  The Hearings Officer must prepare a reasoned decision that also informs the owner of his right to judicial review pursuant to Haw. Rev. Stat. Chapter 91. Hearing Rules §§ 14-5-23(b), 14-5-24(a).  Unless the hearing is continued or the record is kept open, the hearings officer must resolve all matters related to the hearing request within 120

calendar days from the date of the hearing request.[12]   Hearing
Rules § 14-5-23(a).

     This Court can consider the adequacy of the post-
deprivation notice and hearing procedure if the interest at stake
is small relative to the burden that providing pre-deprivation
notice and a pre-deprivation hearing would impose.   See Clement,
518 F.3d at 1093-94.   Plaintiffs first argue that the
circumstances of Article 16 seizures do not warrant excusing the
pre-deprivation requirement of notice and a hearing because the
items being seized include necessities and amenities of life.
They further argue that, even assuming *arguendo* that pre-
deprivation notices and hearings are not required, the delay
between the deprivation and the resolution of the hearing renders
the procedure unconstitutional because necessities and amenities
of life are at issue.   Plaintiffs argue that Stypmann v. City &
County of San Francisco, 557 F.2d 1338 (9th Cir. 1977), held that
an ordinance regarding the towing and storage of illegally parked
cars was unconstitutional, in part because it provided that
someone who could not pay the towage fee could obtain a hearing
within five days from the tow to challenge the traffic citation.
The Ninth Circuit held that the five-day delay clearly violated

     [12] If the hearings officer is not authorized to render a
final decision, he must prepare a proposed decision for the
Facilities Director and the Chief Engineer.   When the Facilities
Director and the Chief Engineer sign the decision, it becomes
final.   Hearing Rules § 14-5-23(b).

due process, stating:

> A five-day delay in justifying detention of a
> private vehicle is too long.  Days, even hours, of
> unnecessary delay may impose onerous burdens upon
> a person deprived of his vehicle.  Lee v.
> Thornton, *supra*, 538 F.2d [27,] 33 [(2d Cir.
> 1976)], a case involving seizure and detention of
> automobiles in comparable circumstances, held that
> due process required action on a petition for
> rescission or mitigation within 24 hours, and, if
> the petition was not granted in full, a hearing on
> probable cause within 72 hours.

Stypmann, 557 F.2d at 1344.  Plaintiffs argue that the instant

case is even more egregious than Stypmann because the seized

items include things like medications, which are even more

necessary than vehicles, and the delay is significantly longer.

The hearings officer is not required to issue a decision after

the hearing until 120 days after an Article 16 hearing request.

The City first responds by arguing that necessities of

life, such as medications, would not be subject to seizure as a

sidewalk-nuisance because they fall within an exception to

Article 16.  See ROH § 29-16.6(1).[13]  While items such as

---

[13] ROH § 29-16.6 states, in pertinent part:

> The prohibitions in this article shall not apply
> to the following:
>
> (1)   An object or collection of objects smaller
>       than 42 inches in length, 25 inches in width,
>       and 43 inches in height, provided that:
>
>       (A)   The object or collection of objects is
>             attended to by an individual at all
>                                         (continued...)

medications would fall within the size exceptions and arguably would not obstruct the roadway, pedestrian movement, access to vehicles, or other lawful activities, and arguably would not threaten public health and safety, an item must meet all of characteristics in ROH § 29-16.6(1) to qualify for the exception. Thus, an item like a container of medication that is unattended does not qualify for the exception. Further, a container of medication that is inside of a tent or a container larger than forty-two by twenty-five by forty-three inches does not qualify for the ROH § 29-16.6(1) exception. See ROH § 29-16.2

---

[13](...continued)
     times;

  (B) The object or collection of objects, or any portion thereof, does not extend into the roadway;

  (C) The object or collection of objects does not obstruct the use of 36 inches in width of the sidewalk and does not obstruct the free movement of pedestrians;

  (D) The object or collection of objects does not obstruct individuals from access to or egress from legally parked vehicles;

  (E) The object or collection of objects does not interfere with other lawful activities taking place on the sidewalk and its placement complies with other provisions of this chapter; and

  (F) The object or collection of objects does not otherwise threaten public health and safety.

("'Sidewalk-nuisance' means any object or collection of objects constructed, erected, installed, maintained, kept, or operated on or over any sidewalk, including but not limited to structures, stalls, stands, tents, furniture, and containers, **and any of their contents** or attachments." (emphasis added)).  This Court therefore rejects the City's argument that necessities and amenities of life, such as medications, are not within Article 16's definition of sidewalk-nuisances.

The Facilities Department's Administrative Directive, however, provides guidelines for the enforcement of Article 16, and it states, in pertinent part:

A.   Assessment of Fees for Necessities:

1.   An assessment of fees may be waived by the Director and Chief Engineer, without hearing, for individuals reclaiming any necessities; provided that the waiver shall be limited to only such necessities.  In the event the Director and Chief Engineer waives [sic] such fees for such necessities, only the necessities shall be released.

2.   For purposes of this section:

"Necessities" means objects that are necessary, essential or indispensible to daily life for a reasonable person similarly situated and that are irreplaceable or that require undue hardship to replace, including, but not limited to, personal identification, birth certificates, prescription medication, and mobility devices.

[Sasamura Decl., Exh. P at 1-2.]  Thus, pursuant to the

Administrative Directive, necessities removed can be recovered in a timely manner without paying any fee and without first having a hearing.  An owner must pay a fee or prevail at a hearing, however, to obtain any remaining items.

In addition, the Administrative Directive states, "a hearings officer may grant the waiver of a fee assessment for a petitioner who properly demonstrates that the payment of the fee assessment would be onerous for the petitioner[.]"  [Id. at 1.] Attached as an exhibit to the Administrative Directive is the six-page Application to Waive Sidewalk-Nuisance Fee.  The Administrative Directive states:

> B.   Waiver of Fees Where Petitioner is Without Funds to Pay Fee:
>
>   1.   Application to Waive Sidewalk-Nuisance Fee Form (Exhibit 1).
>
>        Where a petitioner is without funds to pay the fee, the petitioner may appeal the assessment of such fee due to petitioner's financial status by properly completing and filing an application for waiver of the fee (the "Application to Waive Fee") with the Director and Chief Engineer.  An Application to Waive Fee must be filed not less than fifteen (15) business days . . . before the hearing. . . .
>
>   . . . .
>
>   3.   Determination by Hearings Officer.
>
>        A petitioner must clearly demonstrate that the payment of the fee assessment would be onerous for the petitioner.  If the hearings officer is satisfied that

27

the petitioner is unable to pay all or any portion of a fee, the hearings officer may waive or reduce the fee assessment, regardless of whether the sidewalk-nuisance was properly removed pursuant to [Article 16].  The hearings officer shall evaluate all factors, circumstances and evidence supplied in support of a fee waiver request when making a final determination.  Each case is unique and will be considered on its own merits.

[Id. at 2.]  Thus, where the $200 fee is onerous, a person can seek a waiver to allow recovery of items, even if the Facilities Department properly removed them under Article 16.

In light of these limitations on Article 16, this Court finds that pre-removal notices and hearings are not required because the interests at stake are relatively small in comparison to the fiscal and administrative burdens that the City would incur.  This Court further finds that the post-removal procedures set forth in Article 16, read in conjunction with the Hearing Rules and the Administrative Directive, comply with the requirements of due process.

This Court therefore finds that Plaintiffs are not likely to succeed on the merits of their claim that Article 16, on its face, violates procedural due process.

## B.  Vagueness

Plaintiffs also argue that Article 16, on its face, is unconstitutionally vague because the term "collection[s] of objects" does not have an adequate definition.

28

The Ninth Circuit has recently stated that:

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972).  Nevertheless, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." Ward v. Rock Against Racism, 491 U.S. 781, 794, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989).  "[U]ncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes 'in the vast majority of its intended applications.'" Cal. Teachers Ass'n v. State Bd. of Educ., 271 F.3d 1141, 1151 (9th Cir. 2001) (quoting Hill v. Colorado, 530 U.S. 703, 733, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000)).  "A defendant is deemed to have fair notice of an offense if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the law in question." United States v. Weitzenhoff, 35 F.3d 1275, 1289 (9th Cir. 1994) (internal quotation marks omitted). . . .

Pickup v. Brown, 728 F.3d 1042, 1058-59 (9th Cir. 2013).

ROH § 29-16.3 allows for the summary removal of "sidewalk-nuisances."  Article 16 defines a "sidewalk-nuisance" as "any object or collection of objects constructed, erected, installed, maintained, kept, or operated on or over any sidewalk, including but not limited to structures, stalls, stands, tents, furniture, and containers, and any of their contents or attachments." ROH § 29-16.2.  Plaintiffs argue that it is impossible for them, and for homeless citizens in general, to determine how to comply with the ordinance.  Further, Plaintiffs contend that the seizing official has unfettered discretion to

29

determine what objects violate Article 16.  For example, is a collection determined as objects with the same owner or objects with a spatial relationship?

Plaintiffs argue that courts have consistently invalidated similar statutes.  [Mem. in Supp. of Motion at 17-18 (some citations omitted) (citing City of Chicago v. Morales, 527 U.S. 41, 56-64 (1999) (provision defining loitering as remaining "in any one place with no apparent purpose" was void for vagueness); Kolender v. Lawson, 461 U.S. 352, 358-61 (1983) (statute requiring criminal suspects to provide "credible and reliable" identification held unconstitutionally vague); Smith v. Goguen, 415 U.S. 566, 568-69, 581-81 (1974) (statute making it a crime to "treat contemptuously" the United States flag held unconstitutionally vague)).]  In particular, Plaintiffs argue that the instant case is similar to Morales.

Morales addressed Chicago's Gang Congregation Ordinance, "which prohibit[ed] 'criminal street gang members' from 'loitering' with one another or with other persons in any public place."  527 U.S. at 45.  The ordinance defined ordinance as "'remain[ing] in any one place with no apparent purpose.'" Id. at 47 (alteration in Morales).  The United States Supreme Court held that the loitering ordinance was "vague 'not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in

30

the sense that no standard of conduct is specified at all.'"  Id. at 60 (quoting Coates v. Cincinnati, 402 U.S. 611, 614, 91 S. Ct. 1686, 29 L. Ed. 2d 214 (1971)).  The United States Supreme Court also stated that "[t]he broad sweep of the ordinance also violates 'the requirement that a legislature establish minimal guidelines to govern law enforcement.'"  Id. (internal quotation marks omitted) (quoting Kolender v. Lawson, 461 U.S., at 358, 103 S. Ct. 1855).  Under the ordinance, as interpreted by the Illinois Supreme Court, police officers had absolute discretion to determine what constituted loitering.  Id. at 61.  The United States Supreme Court also noted that, while the ordinance applied to harmless loitering, it was inapplicable to "loitering that has an obviously threatening or illicit purpose" such as "to publicize [a] gang's dominance of a certain territory" or "to conceal ongoing commerce in illicit drugs."  Id. at 63.

While it is true that there is no definition for the term "collection of objects" in Article 16, the definition of "sidewalk-nuisance," as a whole, particularly in conjunction with the exceptions to Article 16, does not suffer from the same type of infirmities as the loitering provision held unconstitutionally vague in Morales.  City officials enforcing Article 16 do not have unfettered discretion to determine what is subject to removal as a sidewalk-nuisance, and Article 16 is not ill-defined as to allow conduct that the City Council intended to prohibit

31

while prohibiting conduct that it did not intend to fall within
the article.  This Court finds that, reading Article 16 as a
whole, a reasonable person would be able to conform his conduct
to the requirements of Article 16.  This Court therefore finds
that Plaintiffs are not likely to succeed on the merits of their
claim that Article 16, on its face, is unconstitutionally vague
because it does contain a definition of a "collection of
objects."

        This Court now turns to Plaintiffs' as-applied
challenges.

### III. As-Applied Challenges

#### A.    Procedural Due Process

        As discussed, *supra*, the provisions of the
Administrative Directive 1) allowing an owner to reclaim his
necessities without paying a fee and without going through the
hearing process, and 2) allowing the hearings officer to waive
all or a portion of the fee if the fee would be onerous for the
petitioner, are essential to the constitutionality of Article 16.
The Summary Removal Notices that Russell and Anderson received
after the removal of their property, however, did not inform them
that they could reclaim their necessities without paying the fee
and without a hearing, nor did the notices inform them that they
could seek a waiver of the fee from the hearings officer if the

fee was onerous for them.[14]  The notices state, *inter alia*:

> The sidewalk-nuisance is stored at the Department
> of Facility Maintenance and may be reclaimed after
> payment of $200 (SEE OTHER SIDE FOR INSTRUCTIONS).
> Please call (808)768-3585 to arrange to reclaim
> sidewalk-nuisance.
>
> . . . .
>
> **YOU MAY RECLAIM PROPERTY WITHIN 30 DAYS FROM THE
> DATE OF REMOVAL OR CONTEST THE REMOVAL BY WRITTEN
> REQUEST FOR HEARING SUBMITTED NO LATER THAN 25
> DAYS FORM DATE OF REMOVAL (SEE OTHER SIDE FOR
> INSTRUCTIONS).  PROPERTY WILL BE SOLD, DONATED, OR
> OTHERWISE DISPOSED OF IF NOT TIMELY CLAIMED OR
> CONTESTED.**
>
> . . . .
>
> (See Back for Request for Hearing and Payment of
> Fees)

[Russell Decl., Exh. 3 at 1 (emphasis in original).[15]]  The other

side of the notices state:

**NOTICE OF REQUEST FOR HEARING**

YOU MAY CONTEST THE REMOVAL OR FEE BY WRITTEN

---

[14] The Court acknowledges that Russell and Anderson were
eventually informed that they could ask the hearings officer to
waive the fee.  The hearings officer, however, found that neither
Russell nor Anderson presented any evidence that warranted
waiving the fee.  [Sasamura Decl., Exhs. Q, R.]

[15] Plaintiffs submitted other Summary Removal Notices issued
to Russell and Anderson, but Plaintiffs only presented
photocopies of the side of the notice listing the items removed.
[Russell Decl., Exh. 2; <u>id.</u>, Exh. 3 at 2; Anderson Decl., Exhs.
1-3.]  The City submitted photocopies of the notices with both
sides.  [Mem. in Opp., Decl. of Cathy Cossey, Exh. M.]  The
notice quoted above is representative of all of the notices
issued to Russell and Anderson.

33

REQUEST FOR HEARING SUBMITTED NO LATER THAN 25
DAYS FROM DATE OF REMOVAL . . . .

. . . .

PROPERTY WILL BE SOLD, DONATED, OR OTHERWISE
DISPOSED OF IF NOT TIMELY CLAIMED OR CONTESTED.

UNLESS ANY CONTEST THAT IS TIMELY FILED IS UPHELD,
PROPERTY OWNER SHALL PAY A $200 FEE TO RECLAIM
PROPERTY FOR ALL COSTS OF REMOVAL, STORAGE AND
HANDLING OF REMOVED PROPERTY.

### PAYMENT OF FEES

Payment of $200 must be made before
sidewalk-nuisance (your property) may be
reclaimed at storage location.

. . . .

[Id. (emphases in original).]

A reasonable person reading these notices would not

realize that, pursuant to the Administrative Directive, he could:

1) reclaim his necessities without paying the fee or going

through the hearing process; and 2) seek a waiver of the fee for

the remaining items from the hearings officer by demonstrating

that the payment of the fee would be onerous for him.  [Sasamura

Decl., Exh. P.]  In light of the City's failure to provide

Plaintiffs with notice of these critical aspects of the

Article 16 process, this Court finds that Plaintiffs are likely

to succeed on the merits of their as-applied due process

challenge.

34

B.   **Fourth Amendment**

Plaintiffs also argue that the City has violated their Fourth Amendment rights in its application of Article 16.[16]  This district court has recognized that:

> The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. v. Place, 462 U.S. 696, 700, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983).  A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." Soldal v. Cook Cnty., Ill., 506 U.S. 56, 68, 113 S. Ct. 538, 121 L. Ed. 2d 450 (1992).

Young v. County of Hawaii, Civ. No. 11-00580 ACK-RLP, 2013 WL 2286068, at *6 (D. Hawai`i May 22, 2013).  Insofar as the seizure of Russell's and Anderson's property violated their right to procedural due process, this Court also concludes that the seizure was unreasonable and a violation of their Fourth Amendment rights.

This Court acknowledges that Russell and Anderson both requested hearings to contest the removals and the Facilities Department conducted a hearing for each of them.  The hearings officer upheld the removals in both decisions and denied both requests for a fee waiver.  [Sasamura Decl., Exh. Q (Findings of Fact, Conclusions of Law, Decision and Order as to Russell); id.,

---

[16] The Fourth Amendment is made applicable to the States by the Fourteenth Amendment.  See, e.g., Payton v. New York, 445 U.S. 573, 576 (1980).

35

Exh. R (Findings of Fact, Conclusions of Law, Decision and Order as to Anderson).]  This Court will neither review the rulings in those decisions nor address whether the items removed, without considering the necessities, were in fact sidewalk-nuisances because there is an appeal process available in the state courts and because Plaintiffs will likely be able to prove that the seizure was unconstitutional in the first instance due to the insufficient notice given at the time of the removals.

This Court therefore finds that Plaintiffs are likely to succeed on the merits of their as-applied Fourth Amendment challenge.

C.  **First Amendment**

Finally, Plaintiffs argue that, "insofar as the seized property that was taken was used in furtherance of the expression of protected speech and activities, Plaintiffs' First Amendment rights have been violated.  Accordingly, Plaintiffs' exercise of protected speech and activities has been unconstitutionally chilled."  [Mem. in Supp. of Motion at 26.]  This Court has recognized:

> The First Amendment prohibits laws "abridging the freedom of speech, . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.  The First Amendment is applicable to the states and local governments through the Due Process Clause of the Fourteenth Amendment.  Menotti v. City of Seattle, 409 F.3d 1113, 1140 n.51 (9th Cir. 2005) (citing De Jonge

36

v. Oregon, 299 U.S. 353, 364, 57 S. Ct. 255, 81 L. Ed. 278 (1937) (some citations omitted)).

A plaintiff can state a § 1983 claim for violation of . . . his First Amendment rights by alleging that the defendant's conduct "deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." See id. at 1155 (standard to prevail on a First Amendment claim on summary judgment) (citation and quotation marks omitted).  This standard requires only that the defendant "intended to interfere with [the plaintiff's] First Amendment rights." Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999) (citation and quotation marks omitted) (emphasis in original). . . .

Molokai Veterans Caring for Veterans v. Cnty. of Maui, Civil No. 10-00538 LEK-RLP, 2011 WL 1637330, at *15-16 (D. Hawai`i Apr. 28, 2011) (some alterations in Molokai Veterans).

Plaintiffs have not presented any evidence that, in enforcing Article 16, the City intended to interfere with their First Amendment rights.  This Court therefore finds that Plaintiffs are not likely to succeed on the merits of their claim that Article 16, as applied, violates the First Amendment.

## IV.  Other Winter Requirements

This Court has found that Plaintiffs are likely to succeed on the merits of their as-applied procedural due process and Fourth Amendment claims.  This Court now turns to the other factors in the Winter analysis.

A.   **Irreparable Harm**

"[A]n alleged constitutional infringement will often alone constitute irreparable harm."  Monterey Mech. Co. v. Wilson, 125 F.3d 702, 715 (9th Cir. 1997) (citation and quotation marks omitted); see also Nelson v. NASA, 530 F.3d 865, 882 (9th Cir. 2008) ("Unlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm."), *reversed on other grounds*, 131 S. Ct. 746 (2011).  In order to obtain a preliminary injunction, a plaintiff must also establish that he is facing imminent irreparable harm.  Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009) ("To seek injunctive relief, a plaintiff must show that he is under threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." (citation and internal quotation marks omitted)).

Russell and Anderson have been, and continue to be, deprived of property and they will likely be able to prove that the deprivation violated their constitutional rights.  Further, Plaintiffs all face the imminent threat of being subjected to

38

additional Article 16 enforcement,[17] and the City has not

presented any evidence that it has changed its enforcement

practices to provide property owners with notice of the right to

reclaim necessities and the right to seek a waiver of the fee

_____

[17] The City does not appear to challenge (De)Occupy Honolulu's standing to sue or its standing to seek a preliminary injunction.  This Court has stated:

> "The requirements to establish third party standing include 'injury in fact,' a close relation to the third party, and 'some hindrance to the third party's ability to protect his or her own interests.'"  Legal Aid Soc'y of Hawaii v. Legal Servs. Corp., 145 F.3d 1017, 1031 (9th Cir. 1998) (quoting Powers v. Ohio, 499 U.S. 400, 411, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991)). . . .

> As to representational or associational standing, the United States Supreme Court has recognized:

>> an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

> Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977).

Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., 861 F. Supp. 2d 1170, 1191 (D. Hawai`i 2012).

For purposes of the instant Motion, this Court finds that (De)Occupy Honolulu meets these requirements and has standing to sue, as well as standing to seek a preliminary injunction.

from the hearings officer.  This Court therefore finds that Plaintiffs all face an imminent threat of irreparable harm.

### B.   **Balance of the Equities**

"To determine which way the balance of the hardships tips, a court must identify the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it."  Univ. of Hawai`i Prof'l Assembly v. Cayetano, 183 F.3d 1096, 1108 (9th Cir. 1999).  Without an injunction, Plaintiffs will arguably continue to suffer constitutional violations.  If this Court grants an injunction and orders the City to return the items identified in the notices issued to Russell and Anderson, the City will benefit by no longer having to store the property and will suffer the minimal monetary loss of not being able to collect fees from Russell and Anderson.  Further, the City would incur minimal burdens from changing its Summary Removal Notices and its Article 16 enforcement procedures to provide property owners with notice of the right to reclaim necessities without a fee and without a hearing and the right to seek a waiver of the fee for any remaining items from the hearings officer.

This Court therefore finds that this factor weighs in favor of issuing the preliminary injunction.

40

C.    **Public Interest**

        This Court has recognized the following principles

relevant to the public interest inquiry:

>                The plaintiffs bear the initial burden
>        of showing that the injunction is in the
>        public interest.  See Winter [v. Natural
>        Resources Defense Council, Inc.], [555 U.S.
>        7,] 129 S. Ct. [365,] 378 [(2008)].  However,
>        the district court need not consider public
>        consequences that are "highly speculative."
>        In other words, the court should weigh the
>        public interest in light of the likely
>        consequences of the injunction.  Such
>        consequences must not be too remote,
>        insubstantial, or speculative and must be
>        supported by evidence.
>
>                . . . .
>
>        Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139-40
>        (9th Cir. 2009) (some citations and quotation
>        marks omitted).  The public interest inquiry
>        primarily addresses the impact on non-parties
>        rather than parties.

Am. Promotional Events, Inc.-Nw. v. City & Cnty. of Honolulu, 796

F. Supp. 2d 1261, 1284-85 (D. Hawai`i 2011) (alterations in Am.

Promotional Events).

        The public has a legitimate interest in being able to

safely use public sidewalks and to be free from nuisances on

those sidewalks.  The public, however, also has an interest in

ensuring that the City enforces Article 16 in a constitutional

manner.  Further, a limited preliminary injunction would only

alter the manner in which the City enforces Article 16; it would

not preclude the City from enforcing it.

41

This Court therefore finds that the public interest factor weighs in favor of issuing the preliminary injunction.

**V.   <u>Preliminary Injunction</u>**

This Court therefore GRANTS Plaintiffs' Motion insofar as this Court HEREBY ENJOINS the City from violating Plaintiffs' procedural due process and Fourth Amendment rights in its enforcement of Article 16.  This Court HEREBY ORDERS the City to:

- return all of the removed items identified in the Russell Declaration, and its exhibits, to Russell;

- return all of the removed items identified in the Anderson Declaration, and its exhibits, to Anderson;

- revise its form Summary Removal Notice, and any other similar notices, to include notice to the property owner of the right to reclaim necessities without a fee and without a hearing, as well as notice of the right to seek a waiver of the fee for the remaining items from the hearings officer; and

- to the extent that property owners are present at the time of removal of items pursuant to Article 16, provide oral notice to the property owners of the right to reclaim necessities without a fee and without a hearing and the right to seek a waiver of the fee for the remaining items from the hearings officer.

The Motion is HEREBY DENIED in all other respects.

<u>CONCLUSION</u>

On the basis of the foregoing, Plaintiffs' motion for preliminary injunction, filed September 19, 2013, is HEREBY GRANTED IN PART AND DENIED IN PART.  This Court GRANTS the Motion insofar as it HEREBY ISSUES the preliminary injunction described above.

42

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 29, 2013.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**CATHERINE RUSSELL, ET AL. VS. CITY AND COUNTY OF HONOLULU; CIVIL 13-00485 LEK-RLP; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**