RICHARD L HOLCOMB (HI Bar No. 9177)
BRIAN J BRAZIER (HI Bar No. 9343) (Of Counsel)
Holcomb Law, A Limited Liability Law Corporation
1136 Union Mall, Suite # 808
Honolulu, HI 96813
Telephone: (808) 545-4040
Facsimile: (808) 356-1954
Email: rholcomblaw@gmail.com
Email: brianbrazier@gmail.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Catherine Russell; Terry Anderson; (De)Occupy Honolulu; And John Does 1-50,<br><br>　　　　　Plaintiffs,<br>vs.<br><br>City and County of Honolulu; John Does 1-50.<br><br>　　　　　Defendants. | CASE NO. CV 13-00475 LEK-RLP<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION AND CLARIFICATION OF ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [Doc. 21]; CERTIFICATE OF SERVICE<br><br>NO HEARING SCHEDULED<br><br>Judge: Hon. Leslie E. Kobayashi |

PLAINTIFFS' MEMORANDUM IN OPPOSTION
TO DEFENDANT'S MOTION FOR RECONSIDERATION AND
CLARIFICATION OF ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

The Motion to Reconsider should be denied as improper. "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County v. ACandS, Inc.,* 5 F.3d 1255, 1262–63 (9th Cir.1993), *cert. denied,* 114 S.Ct. 2242 (1994). The City presents no new evidence, claims no error or manifest injustice, and no change in controlling law has occurred. Nevertheless, in the event that this Court does not deny the motion outright, and to jointly seek clarity as to the interpretation of "necessity" (discussed below and not raised by the City's motion), Plaintiffs offer the following argument in opposition to the City's Motion.

Insofar as the City requests reconsideration as to the return of Plaintiff Russell's property, both parties discussed this issue at length before the deposition of Ms. Russell and resolved this issue. It is counsel's understanding that Ms. Russell has had her property returned. Accordingly, this Response focuses on the property that Mr. Anderson claimed on behalf of De-Occupy Honolulu.

As for that property, the City confuses criminal third-party Fourth Amendment standing cases with those where an organization owns the property.

1

Specifically, in *Rakas v. Illinois*, 439 U.S. 128 (1978), the sole authority cited by the City, criminal defendants "conceded that they did not own the automobile [that was the subject of the challenged search] and were simply passengers; the owner of the car had been the driver of the vehicle at the time of the search. Nor did they assert that they owned the rifle or the shells seized." *Rakas*, 439 U.S. at 130. Accordingly, the Court held that the petitioners lacked standing to challenge the search and seizure. *Id*. at 133-34. The Court specifically stated that "Fourth Amendment rights . . . may not be vicariously asserted."[1] *Id*. In other words, Mr. Anderson could not assert the instant claim for a violation of Ms. Russell's Fourth Amendment rights.

However, organizations as well as individuals are protected by the Fourth Amendment, *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978), and by the Fourteenth Amendment of the United States Constitution, *Minneapolis & St. Louis Railway v. Beckwith*, 129 U.S. 26 (1889) (recognizing corporations receive

---

[1] The same is true of *Westwood v. City of Hermiston*, 787 F.Supp.2d 1174 (D. Ore. 2011). According to the City's Memorandum (at p. 4), summary judgment was granted because "individual agents/shareholders' Fourteenth Amendment procedural due process right[s] [were challenged] when the city's police officers arrested and charged them for obstructing 'government administration' . . . [b]ecause the corporation owned the license and the individuals/agents did not have any legally cognizable 'property interest' in the license . . ." Thus, the District Court of Oregon did not hold that the corporation could not claim a violation of its own due process rights. To the contrary, the Court presupposed that it could.

protection for "enjoyment of property," including to challenge "legislation injuriously affecting it."). There is no requirement as to how the organization must be organized or how strict the affiliation of its members need be.

The law is simply when, as here, an organization owns the property for the use of its members, clearly the organization may assert its rights. And, because an organization is not a living, breathing human being, it can only assert its rights through a human representative. In this case, that person is Mr. Anderson.

Insofar as these issues are concerned, the Motion to Reconsider should be denied. Any other result would render all communally owned property completely unprotected from government intrusion. Plaintiffs do not comment on the City's "Unknown Owners and Return of SNO Removed Property" as Plaintiffs have identified with specificity the property that was taken from them and/or Plaintiff De-Occupy Honolulu on the dates of the raids at issue in this lawsuit.

As for the use of the term "raid," Plaintiffs believe that the term "raid" aptly describes the City's actions. Merriam Webster defines "raid" as:

> a surprise attack on an enemy by soldiers or other military forces;
>
> an occurrence in which police suddenly enter a place in a forceful way to find criminals, illegal drugs, etc.
>
> an act of going into a place (such as a bank) in order to steal something

And, under the "full definition," examples include "hostile or predatory incursion," "a surprise attack by a small force," and "a sudden invasion by law enforcement officers." http://www.merriam-webster.com/dictionary/raid.  Not only is the term appropriate, but also it is perhaps the most precise term available to describe the City's conduct.  Indeed, this element of surreptitiousness is precisely the reason the City passed Bill 7 (or the Sidewalk Nuisance Ordinance) instead of simply continuing to enforce Bill 54 (or the Stored Property Ordinance).

Finally, the parties believe that further litigation is inevitable without *some* clarification.  Specifically, the parties request that this Court clarify the term "necessities" as used in this Court's Order.  The City and the undersigned have discussed the meaning of the term "necessities." From this conversation, counsel assumes that the City's interpretation of that term is much narrower than that of Plaintiffs.  And, should "necessities" be taken from Plaintiffs and not returned pursuant to this Court's Order, Plaintiffs' only remedy would be a request for sanctions – a request that both parties and the Court would like to avoid.

The City stated that it sought guidance from *Lavan v. City and County of Los Angeles*, 693 F.3d 1022 (2012) in interpreting "necessities."  The property at issue in *Lavan* is described as follows:  "personal identification documents, birth certificates, medications, family memorabilia, toiletries, cell phones, sleeping bags and blankets" as well as carts provided by the "Hippie Kitchen," portable

electronics, and shelters. *Lavan*, 693 F.3d at 1025. With the exception of "family memorabilia" and "portable electronics" other than cellphones, those items do appear to be necessities in Plaintiffs' view.

Of these items, Plaintiffs are particularly concerned about the City's interpretation of "necessities" as it pertains to tents and cellphones. In this case, shelter primarily means tents. Clearly shelter should be considered a "necessity" for purposes of this Preliminary Injunction. As one court has observed:

> Similarly, preventing homeless individuals from performing activities that are "necessities of life," such as sleeping, in any public place when they have nowhere else to go effectively penalizes migration. Indeed, forcing homeless individuals from sheltered areas or from public parks or streets affects a number of "necessities" of life"—for example, it deprives them of a place to sleep, of minimal safety and of cover from the elements.

*Pottinger v. City of Miami*, 810 F. Supp. 1551, 1580 (S.D. Fla. 1992). Another court, while perhaps focusing on the importance of the item and harm caused by the loss of the property rather than whether it was a "necessity" specifically included "tents" in its analysis:

> The evidence adduced demonstrates that the City's destruction of homeless people's property causes a variety of other significant, legally cognizable harms. In the City's operations, homeless people lose medicine and health supplies; tents and bedding that shelter them from the elements; clothing and hygiene supplies; identification documents and other personal papers; the tools by which they try to make a meager income; and items of immeasurable sentimental value.

> The irreparable harm from the City's practices also includes the harm to homeless people's security and dignity.[2]

*Kincaid v. City of Fresno*, 106CV-1445 OWW SMS, 2006 WL 3542732 (E.D. Cal. Dec. 8, 2006) (unpublished) (attached as **Exhibit One**). Clearly tents and shelters should be included in this Court's definition of "necessity."

Moreover, assuming a given homeless person is fortunate enough to have one, a cellphone is certainly a "tool by which [homeless] try to make a meager income." Cellphones are necessary to seek jobs and communicate wage-earning opportunities. Cellphones are also necessary to alert police and emergency response personnel in the event of an emergency. Without such means of communication, people are paralyzed as modern society passes them by. Thus, while Plaintiffs concede that a CD-player or radio may not be a "necessity," cellphones certainly are and should be protected by this Court's Order.

Accordingly, Plaintiffs request that this Court specifically include tents and cellphones in its definition of "necessities." "For many of us, the loss of [these] personal effects may pose a minor inconvenience. However, ... the loss can be

---

[2] Because of the City's instant motion, this Court is also free to include items with sentimental value in its definition. While such items may not be necessary to sustain biological life, certainly the seizure and ransoming of such items would have a devastating psychological impact on very vulnerable citizens. Thus, Plaintiffs submit that items such as family photographs, heirlooms, etc., should be protected as necessary to sustain psychological wellbeing and health.

devastating for the homeless." *Lavan*, 693 F.3d at 1032 (quoting *Pottinger,* 810 F.Supp. at 1559.

DATED:  Honolulu, Hawai'i; December 27, 2013.

s/*Richard L. Holcomb*____
Richard L. Holcomb
Brian Brazier of Counsel
Attorney for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Catherine Russell; Terry Anderson; (De)Occupy Honolulu; And John Does 1-50,<br><br>    Plaintiffs,<br> vs.<br><br>City and County of Honolulu; John Does 1-50.<br><br>    Defendants. | CASE NO.  CV 13-00475 LEK-RLP<br><br><br><br>CERTIFICATE OF SERVICE |

## **CERTIFICATE OF SERVICE**

  I hereby certify that on the date first stated below, or in compliance with the rules of this Court, I did serve a true and exact copy of the foregoing document via this Court's electronic filing system, upon the following:

Ernest Nomura,
Dept. of Corp. Counsel
530 S. King St.
Room 110
Honolulu, HI  96813

DATED:  Honolulu, Hawaii; December 27, 2013.

             *s/Richard L. Holcomb*
             Richard L. Holcomb
             Attorney for Plaintiffs